UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| AMERICAN BANK, FSB, d/b/a AMERICAN PREMIUM FINANCE, ) ) ) Plaintiff, ) ) ) v. ) ) CORNERSTONE COMMUNITY BANK, ) ) Defendant. ) | No. 1:11-cv-324 *Lee* |

## MEMORANDUM AND ORDER

Before the Court is a supplemental motion for summary judgment [Doc. 38] filed by Plaintiff American Bank, a cross-motion for summary judgment [Doc. 44] filed by Defendant Cornerstone Community Bank, and a motion to certify a question of law to the Supreme Court of Tennessee [Doc. 48] filed by Defendant. For the reasons explained below, Defendant's motion to certify a question of law to the Supreme Court of Tennessee [Doc. 48] will be **DENIED**, Plaintiff's supplemental motion for summary judgment [Doc. 38] will be **GRANTED**, and Defendant's cross-motion for summary judgment [Doc. 44] will be **DENIED**.

### I. FACTUAL BACKGROUND

Plaintiff seeks a declaratory judgment that it had a perfected security interest in certain funds Defendant applied to a debt owed to it by U.S. Insurance Group ("USIG") [Doc. 1 at PageID #1]. Plaintiff asserts in its Complaint that USIG had an agreement with Defendant whereby Defendant would lend money to USIG through a line of credit and Defendant asserted security interests in USIG's commissions on insurance premium accounts [*id.* at PageID #3]. USIG also maintained an operating account, numbered 103019130, with Defendant [*id.*]. In 2008, USIG acted as broker for an agreement between Saberline Transportation Inc. ("Saberline") and Plaintiff whereby Plaintiff

would finance insurance agreements for Saberline [*id.*]. As part of the agreement between Plaintiff, USIG, and Saberline, Plaintiff financed $429,991.41 to fund Saberline's insurance policies after a $50,000 down payment [*id.*]. USIG negotiated the terms of the insurance policies with Praetorian Insurance Company ("Praetorian") on behalf of Saberline, and the policies were effective as of November 1, 2008 [*id.*]. The agreement gave Plaintiff a security interest in any unearned return premiums and gave Plaintiff full authority to cancel policies upon default [*id.*]. Pursuant to the agreement, Plaintiff wired $379,333.64 to the account USIG held with Defendant on November 12, 2008, and wired another $50,657.77 to the account on November 13, 2008 [*id.*; Doc. 21-5 at PageID #137-38].

Based on an agreement between USIG and Defendant under which Defendant would perform daily sweeps of USIG's operating account as long as the balance did not go below $50,000 and would apply the funds to USIG's line of credit with Defendant, Defendant swept funds out of USIG's account on November 12 and 13, 2008 [Doc. 1 at PageID #4; Doc. 25 at PageID #229; Doc. 21-5 at PageID #139; Doc. 25-3 at PageID #250]. Defendant swept $376,579.46 on November 12 and $58,196.59 on November 13 [Doc. 25 at PageID #229; Doc. 21-5 at PageID #139]. Saberline subsequently failed to make its initial payment to Plaintiff and was in default; therefore, Plaintiff sent Notices of Cancellation to Praetorian and its agent on December 22, 2008 [Doc. 1 at PageID #4]. USIG could not refund the unearned premiums to Plaintiff from its account with Defendant due to Defendant's sweeps of the account, so USIG repaid Plaintiff $413,739.00 on April 1, 2009 with funds drawn from a USIG account at Park Avenue Bank [*id.* at PageID #4-5].

On April 22, 2009, USIG filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Tennessee [Doc. 1 at PageID #2]. The case was later

2

converted to a Chapter 7 bankruptcy and Richard P. Jahn, Jr. was appointed USIG's Chapter 7 trustee (the "Trustee") [*id.*]. On January 20, 2010, the Trustee filed a complaint against Plaintiff seeking to recover the $413,739.00 payment USIG made to Plaintiff [*id.* at PageID #5]. The Trustee asserted the payment was a preferential transfer because Plaintiff lost its secured creditor status after Defendant swept the funds out of USIG's operating account and the money subsequently paid to Plaintiff was property of USIG and could therefore be avoided pursuant to the bankruptcy proceeding [*id.*]. Following discovery, the Trustee and Plaintiff negotiated a settlement whereby Plaintiff agreed to pay $310,304.25 to settle the avoidance action [*id.*]. The settlement was approved by the Bankruptcy Court and did not affect Plaintiff's rights to pursue an action against Defendant [*id.*]. Before Plaintiff paid the funds to the Trustee, Plaintiff made demand on Defendant for payment of the funds Defendant swept from USIG's account, but Defendant refused to pay any funds to Plaintiff [*id.* at PageID #6]. Therefore, Plaintiff made payment to the Trustee on June 10, 2011 [*id.*].

Plaintiff alleges that it was exposed to the preference action because Defendant swept the funds out of USIG's operating account to apply to USIG's line of credit with Defendant, thereby violating Plaintiff's senior, perfected security interest in the funds [Doc. 1 at PageID #5]. In its Complaint, Plaintiff seeks a declaration that Plaintiff's perfected security interest in the funds in USIG's operating account with Defendant were superior to any other claim on the funds held by Defendant on November 12 and 13, 2008 [*id.* at PageID #6]. Plaintiff also claims that Defendant is liable for conversion for using the funds in USIG's operating account for its own benefit to pay down USIG's line of credit with Defendant, thereby violating Plaintiff's perfected security interest and exposing Plaintiff to the Trustee's avoidance action [*id.* at PageID #7].

3

Plaintiff previously moved for summary judgment [Doc. 20] and, by an order dated June 29, 2012, the Court granted the motion in part and denied it in part (hereinafter the "June Order") [Doc. 36]. Specifically, the Court held that Plaintiff had a perfected security interest in the funds at issue pursuant to Tennessee Code Annotated § 56-37-112 that took priority over any other interests and existed until the funds were swept from the account by Defendant. Because the parties had focused their arguments on perfection, the Court declined to address other crucial questions, such as what happened to Plaintiff's security interest at the time of the sweeps, whether Article 9 of the Uniform Commercial Code ("UCC") would apply to the transaction, and whether Defendant's sweeps constituted conversion of the funds. The parties then engaged in some discovery and have now filed cross-motions for summary judgment.

## II.   STANDARD OF REVIEW

Summary judgment is mandatory where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one that *matters*—i.e., a fact that, if found to be true, might "affect the outcome" of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The applicable substantive law provides the frame of reference to determine which facts are material. *Anderson*, 477 U.S. at 248. A "genuine" dispute exists with respect to a material fact when the evidence would enable a reasonable jury to find for the non-moving party. *Id.*; *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). In determining whether a dispute is "genuine," the court cannot weigh the evidence or determine the truth of any matter in dispute. *Id.* at 249. Instead, the court must view the facts and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986); *National Satellite Sports*, 253 F.3d at 907. A mere scintilla of evidence is not enough to survive a motion for summary judgment. *Anderson*, 477 U.S. at 252; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The moving party bears the initial burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. James*, No. 7:09-CV-98 (HL), 2011 WL 837179, at *1 (M.D. Ga. Feb. 2, 2011). The movant must support its assertion that a fact is not in dispute by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c). If the moving party carries this burden, the opposing party must show that there is a genuine dispute by either "citing to [other] particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." *Id.* In reply, the movant may then attempt to show that the materials cited by the nonmovant "do not establish the . . . presence of a genuine dispute." *Id.* Either party may also attempt to challenge the admissibility of its opponent's evidence. *Id.*

A court is not required to consider materials other than those specifically cited by the parties, but may do so in its discretion. *Id.* If a party fails to support its assertion of fact or to respond to the other party's assertion of fact, the court may "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e).

### III. ANALYSIS

#### A. Motion to Certify Question of Law to the Supreme Court of Tennessee

After the cross-motions for summary judgment were filed, Defendant filed a motion seeking

5

Case 1:11-cv-00324-SKL   Document 54   Filed 10/19/12   Page 5 of 17   PageID #: 516

to have the Court certify a question of law to the Supreme Court of Tennessee [Doc. 48]. Specifically, and in conjunction with Defendant's novel arguments in its motion for summary judgment, to be discussed *infra*, Defendant argues the Court should ask the Supreme Court of Tennessee to determine whether Tenn. Code Ann. § 56-37-112 creates a private right of action for Plaintiff to file the instant case [Doc. 48 at PageID #490]. Defendant asserts that it believes a ruling by the Tennessee Supreme Court on this issue would be dispositive of the case [*id.* at PageID #491]. In response, Plaintiff makes two main arguments: first, Plaintiff contends there is no need to certify any question to the Tennessee Supreme Court because Plaintiff is not asserting a cause of action under the statute and has instead filed the case under the Federal Declaratory Judgment Act; second, Plaintiff argues Defendant cannot seek such a ruling on a question after receiving an adverse decision when it could have made a motion to certify this question well before the June Order or Defendant's pending motion for summary judgment [Doc. 49 at PageID #496-500].

Rule 23 of the Supreme Court of Tennessee provides that the Tennessee Supreme Court may answer questions of law submitted by this Court and others "when the certifying court determines that, in a proceeding before it, there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee." Sup. Ct. Rules, Rule 23. Certification is inappropriate and unnecessary in this case because the Court finds the question presented by Defendant will not be determinative of the cause and, in fact, would not determine any issue particularly relevant to this case. Plaintiff's Complaint asserts claims pursuant to 28 U.S.C. § 2201, the declaratory judgment statute, and the common law tort of conversion. Plaintiff did not file the suit under or pursuant to Tenn. Code Ann. § 56-37-112. Plaintiff instead relies upon the statute to

6

support its claim that the Court should declare it had priority over the funds at issue, but there is no separate claim that Plaintiff has asserted or could sustain under that statute, as the statute provides for no declaratory or monetary relief.

Furthermore, the timing of Defendant's motion is indeed problematic. Defendant's argument is essentially a somewhat disguised request for reconsideration of the June Order, but the motion is not supported by new information. Indeed, it appears nothing would have prevented Defendant from making such an argument, or filing the motion, at a much earlier stage of the litigation. Because certifying this question would not comply with Rule 23 and would serve no purpose in the instant case, Defendant's motion to certify a question of law to the Tennessee Supreme Court [Doc. 48] will be **DENIED**.

### B. Motions for Summary Judgment

As the Court has already noted above, Defendant asserted a variety of "new" arguments in its response to Plaintiff's supplemental motion for summary judgment (which also serves as the basis for its own motion for summary judgment). For example, Defendant claims, for the first time, that Plaintiff cannot seek perfection under the premium financing company statute because Plaintiff is not a premium financing company licensed to do business in Tennessee, as required by the premium financing company statute [Doc. 42 at PageID #375-76]. Defendant further claims there is no private right of action under the premium financing company statute, as addressed above in the context of Defendant's motion to certify a question to the Supreme Court of Tennessee [*id.* at PageID #377-79; Doc. 48].

To the extent Defendant makes these additional arguments to seek reconsideration and reversal of the June Order pursuant to Fed. R. Civ. P. 54(b) (although Defendant has not made any

7

explicit request for reconsideration), the holdings set forth in the June Order are now the law of the case and will not be disturbed. *See Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002) ("Under the law-of-the-case doctrine, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation."). Although there are grounds for reconsidering a decision previously made—such as new evidence, a change in the controlling law, or manifest injustice, *see Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004),—none of these grounds are present here. There is no new evidence, as Defendant could have obtained the relevant information and made the same arguments against the applicability of the statute in responding to Plaintiff's first motion for summary judgment. Defendant does not indicate any change in the controlling law and makes no argument that refusal to reconsider the June Order would result in manifest injustice. As such, the Court's holding that Plaintiff had a perfected security interest in the funds at issue pursuant to the premium financing company statute will stand.

Turning to the issues not addressed in the June Order, the parties' arguments are as follows. Plaintiff argues that Article 9 of the UCC does not apply to any part of the transaction at issue in this case and, thus, Tennessee Code Annotated § 47-9-332(a) cannot apply [Doc. 39 at PageID #349-51]. Plaintiff relies on various cases it previously cited plus new arguments concerning Tenn. Code Ann. § 47-9-109(d)(8) [*id.* at PageID #349-50]. Plaintiff again asserts that application of Article 9 principles would conflict with the premium financing company statute and it argues the Court should look to the common law of the state to resolve the issues presented [Doc. 39 at PageID #351-52]. Finally, Plaintiff makes a more detailed argument about Defendant's liability for conversion, specifically arguing that Defendant exercised dominion over the funds when it performed the sweeps

8

and that Defendant benefitted as much from the sweeps as did USIG [*id.* at PageID #352-56].

Defendant makes a three-fold argument in favor of the application of Article 9 principles to the transactions at issue. First, Defendant argues the restrictions to the application of Article 9 (where it would conflict with statute or other law) found in Tenn. Code Ann. § 47-9-201, apply to consumer laws and consumer transactions only, and the transaction here is a commercial one; therefore, Article 9 does not conflict with the premium financing company statute [Doc. 42 at PageID #379-82]. Second, Defendant asserts that Article 9 principles do not conflict with the premium financing company statute in any event because the statute is silent as to priority, duration, and enforcement of the security interest [*id.* at PageID #382-83]. Finally, Defendant contends the restriction on the application of Article 9 to insurance policy claims contained in Tenn. Code Ann. § 47-9-109(d)(8) does not preclude the application of Article 9 to this case because the language of the statute means a claim on an insurance policy, which is different from the transaction at issue in this case [*id.* at PageID #383-84]. Defendant argues the Court can use Article 9 to resolve the questions unanswered in the statute but, if the Court decides Article 9 does not apply, Defendant contends the common law of the state will still give them priority over the funds because of its common law banker's lien [*id.* at PageID #384-85]. Assuming the Court applies Article 9, Defendant urges the application of Tenn. Code Ann. §47-9-332 to allow it to transfer the funds free of Plaintiff's security interest, Tenn. Code Ann. § 47-9-327 to give the bank priority over accounts it maintained, Tenn. Code Ann. § 47-9-314 to give the bank a perfected security interest in the deposit account by control, and Tenn. Code Ann. § 47-9-341 to give the bank unterminated rights with respect to the deposit account, regardless of security interests in the funds [*id.* at PageID #385-89]. Defendant finally argues that Plaintiff has not established conversion because Defendant had

9

a superior interest in the funds at the time it swept them from the account [*id.* at PageID #390].

It appears from the parties' cross-motions and submissions that no material facts are in dispute and, to that end, the parties stipulated to a stay of discovery pending resolution of the motions and the stipulation was entered by the Court [Docs. 41 & 47]. As such, it appears the parties agree on the material facts and dispute only the application of the law to those facts. Thus, the first question of law the Court must address is whether Article 9 of the UCC applies to the transaction at issue.[1]

Although the Court notes Defendant's first argument in favor of Article 9's application centers on the assertion that Tenn. Code Ann. § 47-9-201 does not conflict with the premium finance company statute, this argument is unnecessary to consider because the resolution of this issue can be resolved by looking to another part of Article 9. Neither party specifically delved into the reason why certain cases, which were cited by Plaintiff and addressed by Defendant in their briefs leading to the June Order, held Article 9 would not apply to the transaction at issue; but, as noted in the June Order, the most specific reason why is found in Tenn. Code Ann. § 47-9-109, which sets forth the scope of the chapter and specifically excludes the chapter from applying to "a transfer of an interest in or an assignment of a claim under a policy of insurance . . ." with a few exceptions not relevant to this case. Tenn. Code Ann. § 47-9-109(d)(8). There is no comment to the statute that provides explanation or examples of the subsection's application. Nonetheless, the vast majority of courts

---

[1] As noted above, Plaintiff represents Article 9 does not apply, while Defendant presents various arguments for its application. The parties advanced somewhat similar, albeit more narrowed, arguments in the briefing on Plaintiff's first motion for summary judgment: Plaintiff argued against Article 9 applying to the issue of perfection in light of the premium financing company statute, Defendant argued the cases cited by Plaintiff were distinguishable and contended Article 9 priority principles governed the issues [Doc. 21 at PageID #72-74; Doc. 25 at PageID #235-40].

which have addressed whether the insurance exclusion provision of Article 9 applies to transactions in the premium finance insurance company context have found the insurance exclusion provision prohibits the application of Article 9 to *any* transaction stemming from a premium financing company insurance transaction or *any* transaction involving collateral consisting of unearned insurance premiums within that context. *See In re Barton Indus., Inc.*, 104 F.3d 1241, 1246 (10th Cir. 1997) ("Article 9 of the [UCC] does not directly apply in this case because the security interests were 'in or under [a] policy of insurance' . . . [w]here the [UCC] is inapplicable, security interest disputes may be resolved by reference to[] existing statutes and pre-code case law"); *In re QA3 Fin. Corp.*, No. BK11-80297-TJM, 2011 WL 1297840, at *2 (Bankr. D. Neb. Apr. 5, 2011) ("According to all of the cases that have dealt with this particular issue with regard to premium financing agreements and security interests in unearned premiums, Article 9 of the [UCC], which deals with perfection of security interests, among other things, does not apply to an interest in unearned insurance policy premiums"); *In re St. James Inc.*, 402 B.R. 209, 213-14 (Bankr. E.D. Mich. 2009) ("But a security interest in unearned insurance premiums is excluded from the coverage of Article 9, because it is an 'interest or claim in or under any policy of insurance' . . . [w]here Article 9 does not apply, of course, courts examine other relevant state law"); *In re JII Liquidating, Inc.*, 344 B.R. 875 882-84 (Bankr. N.D. Ill. 2006) (citing a number of cases not duplicatively referenced which hold that Article 9 does not apply to a security interest in unearned insurance premiums because of the restriction in 9-109(d)(8)); *In re Big Squaw Mountain Corp.*, 122 B.R. 831, 835-36 (Bankr. D. Me. 1990) (noting the restriction is also used "to determine the scope of secured claims based solely upon a security interest created and perfected under the U.C.C.'s provision" and that "[v]irtually all of the cases that have addressed the issue have concluded that a premium financing entity's right to

11

unearned premium refunds on cancellation are excluded from the U.C.C.'s rules"); *In re Expressco, Inc.*, 99 B.R. 395, 396 (Bankr. M.D. Tenn. 1989) (noting the exclusion "expressly excludes transactions related to insurance from the operation of Article 9" and "applies to insurance premium financing agreements"); *In re Universal Motor Exp., Inc.*, 72 B.R. 208, 210 (Bankr. W.D.N.C. 1987) (noting that "the breadth of the exclusion, the comments by the draftsmen of the Uniform Commercial Code, and case law from other jurisdictions convince the Court that Article 9 does not apply to a secured transaction in which the collateral consists of unearned insurance premiums.").

In the June Order, the Court determined Article 9 did not apply to the issue of perfection, as the premium financing company statute would conflict with Article 9 rules in that area pursuant to Tenn. Code Ann. § 47-9-201.[2] But due to the lack of argument as to Article 9 principles applying to any other part of the transaction, the Court could not adequately address whether Article 9 might apply to some other aspect of the transaction. Given the arguments set forth in the cross-motions, the broad language of the exclusion in Tenn. Code Ann. § 47-9-109(d)(8), and the case law that overwhelmingly applies the exclusion to any transaction consisting of a security interest in unearned insurance premiums, the Court now concludes that Article 9 does not apply to any part of the transaction at issue in this case.

As a result, the Court cannot apply any Article 9 rules to any of the actions that took place

---

[2] As referenced above, one of Defendant's arguments is that this section applies only to consumer law [Doc. 42 at PageID #380-81]. To the extent to which this argument seeks reconsideration and reversal of the Court's reliance on the statute to find conflict with the premium financing company statute, the Court concludes that decision is law of the case. Regardless, the Court is not persuaded by Defendant's argument that it only restricts application of Article 9 to conflicting consumer law by virtue of the language used in the statute. Moreover, further discussion of this section is unnecessary because the provision in Tenn. Code Ann. § 47-9-109(d)(8) would eclipse the application of Article 9 to any aspect of the transaction at issue here.

12

with the money at issue in the case and must instead apply common law to determine whether Plaintiff's security interest in the funds continued after Defendant swept the account and applied the funds to USIG's debt. While Plaintiff cites Tennessee law for the proposition that any provision of Article 9 would conflict with the premium finance statute, Plaintiff does not precisely provide common law authority governing the entire transaction. Nonetheless, the Tennessee Court of Appeals has noted as follows with respect to priority:

> The most fundamental rule of priority, applied generally throughout the law to order conflicting liens, security interests, and other claims, is that interests rank in the order they were created or perfected. This policy is reflected in the equitable maxim "first in time, first in right." . . . Thus, priority disputes are generally determined according to the "first in time" rule, as modified by perfection requirements, unless there is some other ground for preference.
>
> . . .
>
> As comprehensive as Article 9 is, it does not govern all priority disputes. . . . When Article 9 does not supply the priority rules directly, the courts frequently seek guidance from common-law doctrines such as the "first in time" rule. . . . The courts will also consult the priority rules in Article 9 for guidance. . . . Ordinarily, the relative priority of a security interest and a statutory lien is determined by the order in which the statutory lien vested or the security interest was perfected. Thus, in the absence of a statute or a common-law exception, a secured creditor with a perfected security interest has priority over a subsequent lien creditor, and a lien creditor has priority over an unperfected secured creditor.

*Willingham v. Gallatin Group, Inc.*, No. M1998-00990-COA-R3CV, 2001 WL 134599, at *2-4 (Tenn. Ct. App. Feb. 16, 2001).

Here, Plaintiff's security interest in the funds at issue was granted and perfected pursuant to the premium financing company statute. Defendant would not have had an earlier security interest in the funds resulting in a priority over Plaintiff's interest, but Defendant asserts its common law

13

banker's lien in the account in which the funds were deposited would give it priority over Plaintiff's security interest [Doc. 42 at PageID #384-85].  As Plaintiff argued in its reply to Defendant's response during the briefing on the first motion for summary judgment, however, the case relied upon by Defendant for the proposition that the banker's lien would give it priority not only held "'[t]he bank holds a lien on the deposits in its hands to secure the repayment of the depositor's indebtedness,'" but also held the bank does not have such a lien on "'special deposits or monies deposited for a specific purpose, or for collateral security, or for the payment of a particular debt.'" *Wagner v. Citizens' Bank & Trust Co.*, 122 S.W. 245, 247 (Tenn. 1909).  Moreover, the lien would not arise "'under special circumstances, or where there is a statute to the contrary. . .'" *Id.* at 249 (quoting *New York Cnty. Bank v. Massey*, 192 U.S. 138, 145 (1904)).

As such, the Court finds a common law banker's lien would not give Defendant priority over the funds at issue.  Instead, the premium financing company statute affording Plaintiff a perfected security interest in the funds, along with common law priority rules, establish that Plaintiff's security interest was the first interest created in the funds and, pursuant to the statute, was effective against "creditors, subsequent purchasers, pledgees, encumbrancers, trustees in bankruptcy or any other insolvency proceeding under any law or anyone having the status or power of the aforementioned or their successors or assigns." Tenn. Code Ann. § 56-37-112.  Defendant did not have a security interest in the funds that took priority over Plaintiff's interest at any time.  Thus, and in conjunction with its prior holding in the June Order, the Court concludes that Plaintiff's perfected security interest maintained priority even though Defendant swept the funds from the account and applied the funds to USIG's debt.

14

## C. Conversion

This declaration, however, does not afford Plaintiff any monetary damages. In order for Plaintiff to recover the funds swept by Defendant and applied to USIG's debt—the funds Plaintiff eventually received from another USIG bank account and which Plaintiff later had to pay to the Trustee—it must prove Defendant is liable for conversion. As the Court has already noted, in Tennessee, "[c]onversion is the appropriation of another's property to one's own use and benefit, by the exercise of dominion over the property, in defiance of the owner's right to the property." *Ralston v. Hobbs*, 306 S.W.3d 213, 221 (Tenn. Ct. App. 2009); *see also River Park Hosp., Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 173 S.W.3d 43, 60 (Tenn. Ct. App. 2002).

Although conversion is generally invoked with respect to tangible property, courts have determined the principles can also apply to financial property. *See State ex rel. Flowers v. Tennessee Coordinated Care Network*, No. M2003-01658-COA-R3-CV, 2005 WL 427990, at *8 (Tenn. Ct. App. Feb. 23, 2005) (noting that "[c]onversion is the appropriation of *tangible* property" and stating three ways conversion could occur); *but cf. Duncan v. Claiborne Cnty. Bank*, 705 S.W.2d 663, 665-66 (Tenn. Ct. App. 1985) (noting a depositor and bank could be guilty of conversion of funds); *see also In re Machinery, Inc.*, 337 B.R. 368, 375 (Bankr. E.D. Mo. 2005) (finding a junior secured creditor liable for conversion for refusing a senior secured creditor's demand to return collateral); *see generally Gen. Elec. Capital Corp. v. Union Planters Bank, N.A.*, 409 F.3d 1049 (8th Cir. 2005).

The elements of a conversion claim are "(1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights." *Marks, Shell, & Maness v. Mann*, No. M2002-00652-COA-R3-CV, 2004 WL

15

1434318, at *3 (Tenn. Ct. App. 2004). Plaintiff argues a bank does exercise dominion and control over funds when it applies such funds to unpaid loans and further argues Defendant benefitted from the use of the funds because it was able to pay down USIG's obligation to it [Doc. 39 at PageID #354-56]. While Defendant argued it had a superior security interest in the funds (and thus Plaintiff could not have had a security interest that took priority at the time of the sweeps, negating any possible conversion), Defendant made no other argument opposing Plaintiff's contentions as to the conversion [Doc. 42 at PageID #390].

The Court is now satisfied that Plaintiff has established conversion. In the absence of much authority from this circuit, Plaintiff has provided authority from other circuits that a bank exercises dominion and control over funds when it applies funds to existing debt. *See Bonded Fin. Servs. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988) (addressing the definition of "transferee" under the Bankruptcy Code and noting "the minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes . . . . The Bank had no dominion over the $200,000 until January 31, when Ryan instructed the Bank to debit the account to reduce the loan"); *see also In re Baker & Getty Fin. Servs., Inc.*, 974 F.2d 712, 722 (6th Cir. 1992) (referencing *Bonded* and discussing an initial transferee in the context of the Bankruptcy Code as one that has dominion over the funds). Thus, in this case, Defendant had dominion over all funds in USIG's account over the $50,000 floor balance on a daily basis because USIG had authorized Defendant to make daily sweeps of the money in that account to pay down its debt to Defendant. The sweeps were made without regard to the superior security interest Plaintiff maintained in the funds and, as such, the funds were swept by the bank in defiance of Plaintiff's rights. Moreover, Defendant benefitted from its sweep of the funds and the application of the funds

16

to the debt owed to it by USIG because the obligation owed to Defendant by USIG—and the attendant risk of having a substantial loan owed by a company in trouble—was reduced. Accordingly, Defendant is liable for converting the funds to its own use in violation of Plaintiff's rights.

As a result, Plaintiff's motion for summary judgment, which sought a declaratory judgment that its security interest took priority over any interest of Defendant when it swept the funds from USIG's account, and which further sought a holding that Defendant is liable for conversion, will be **GRANTED**. For the above noted reasons, Defendant's cross-motion for summary judgment will be **DENIED**.

## IV. CONCLUSION

For the reasons outlined above, Defendant's motion to certify a question of law to the Supreme Court of Tennessee [Doc. 48] is **DENIED**, Plaintiff's supplemental motion for summary judgment [Doc. 38] is **GRANTED**, and Defendant's cross-motion for summary judgment [Doc. 44] is **DENIED**. Pursuant to 28 U.S.C. § 2201, the Court **DECLARES** that Plaintiff had a superior security interest in the funds at issue that took priority over any interest of Defendant. As such, Defendant is liable for conversion and Plaintiff is awarded monetary damages in the amount of $310,304.25. This Order resolves all claims and issues remaining in the case and it is **DISMISSED WITH PREJUDICE**.

A separate judgment will enter.

SO ORDERED.

ENTER:

                                            s/ *Susan K. Lee*
                                            SUSAN K. LEE
                                            UNITED STATES MAGISTRATE JUDGE